2020 IL App (2d) 150824-U-B
No. 2-15-0824
Order filed June 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-CM-2654 |
| GABRIEL ENRIQUE BERRIOS, | ) ) | Honorable Donald J. Tegeler, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Schostok and Hudson concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's misdemeanor conviction for unlawful contact with a street gang member is reversed for insufficient evidence.

¶ 2     This case returns to us on remand from the supreme court (see *People v. Berrios*, No. 123603 (Nov. 26, 2019) (supervisory order)), directing us to reconsider our previous opinion in this case in light of the court's decision in *People v. Murray*, 2019 IL 123289. Defendant, Gabriel Enrique Berrios, and the State filed supplemental briefs discussing the sufficiency of the evidence to maintain defendant's conviction for unlawful contact with a street gang member. See 720 ILCS

5/25-5(a)(3) (West 2012). After reviewing the briefs, record, and the supreme court's decision in *Murray*, we reverse defendant's conviction.

¶ 3                                    I. BACKGROUND

¶ 4      In 2012, the State sought and received an injunction under the Illinois Streetgang Terrorism Omnibus Prevention Act (Act) (740 ILCS 147/1 *et seq.* (West 2012)), which identified defendant and 35 other individuals as members of the Latin Kings in Aurora. Relevant here, the injunction prevented Berrios from "appearing anywhere in public view" with a member of the Latin Kings or any other street gang.

¶ 5      On July 4, 2013, defendant was arrested for having unlawful contact with a street gang member named Angelo Parra. A bench trial on that charge revealed that officers responded to the scene of a dispute at an apartment complex between Parra and another young man. According to officers, defendant appeared to be mediating the dispute, and "tr[ied] to help calm things down." Defendant called Parra "King" during the confrontation and was subsequently arrested for unlawful contact with a street gang member.

¶ 6      At trial, Erik Swastek, an Aurora police investigator, testified as an expert on gangs. He testified that a gang is "comprised of three or more individuals seeking a common goal trying to achieve criminal gains" and that gangs had "no lawful purpose." He further testified that the Aurora Police Department's special operations group tracks "eight or nine" gangs, including the Latin Kings. Swastek also stated that the Aurora police database on local gang members had multiple listings—or "gang sheets"—for Angelo Parra as a member of the Latin Kings. The trial court found defendant guilty and he served 30 days in the county jail.

¶ 7      We initially affirmed defendant's conviction and sentence on direct appeal. See *People v. Berrios*, 2018 IL App (2d) 150824. In so doing, we held that although his testimony could have

been more comprehensive, Swastek expressed the opinion that the Latin Kings are a street gang, which was sufficient to support a reasonable determination that the Latin Kings had engaged in a course or pattern of criminal activity within the meaning of Section 10 the Act. *Id.* ¶ 22. We held that nothing more was required under our precedents, quoting *People v. Murray*, 2017 IL App (2d) 150599, ¶ 83, that " 'an expert on gangs may opine on the ultimate issue of whether an organization is a street gang engaged in a course or pattern of criminal activity without testifying to specific dates or incidents.' " *Berrios*, 2018 IL App (2d) 150824, ¶ 22.

¶ 8 Subsequently, our supreme court reversed *Murray*, noting that the "legislature intended to hold the State to a 'very, very high' burden" in establishing the element that the Latin Kings are a " 'streetgang,' which requires proof of 'a course or pattern of criminal activity' " as defined in the Act. *Murray*, 2019 IL 123289, ¶ 42. This remand followed.

¶ 9                                              II. ANALYSIS

¶ 10 With the guidance from *Murray*, we now review whether the State presented sufficient evidence to maintain defendant's conviction. The core issue in this appeal is whether the State's evidence established a "course or pattern of criminal activity"—that is, (1) that the Latin Kings were involved in two or more gang-related criminal offenses; (2) that at least one such offense was committed after January 1, 1993; (3) that both offenses were committed within five years of each other; and (4) that at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony. See 740 ILCS 147/10 (West 2012); *Murray*, 2019 IL 123289, ¶ 42.

¶ 11 Although there are two plurality opinions in *Murray*, four justices agreed to reverse the defendant's conviction of unlawful possession of a firearm by a street gang member because the State failed to prove that the Latin Kings were a "streetgang" as defined by the Act. See *Murray*,

2019 IL 123289, ¶ 53 ("when we consider the evidence in the light most favorable to the State, we find that the State did not present evidence that established the element codified in the statute.") (opinion of Neville, J., joined by Burke, J.); *id.* ¶ 64 ("[The State] did not offer *any* specific evidence on each of the legislatively mandated factors needed to fulfill section 10's strictly delineated definition of a 'street gang.' *** Mere supposition or 'common knowledge' that the Latin Kings not infrequently commit crimes cannot replace substantive evidence ***.") (Kilbride, J., specially concurring, joined by Karmeier, C.J.).

¶ 12    Here, the State correctly concedes that its trial evidence did not specifically establish the required course or pattern of criminal activity; thus, after *Murray*, we are compelled to reverse defendant's conviction. The parties differ, however, on what remedy we should order. The State suggests that, because *Murray* represented a change regarding the degree of the State's burden of proof in trials under the Act, it should be permitted to retry defendant. Quoting *People v. McKown*, 236 Ill. 2d 278, 311 (2010), the State asserts that, "[i]f the evidence presented at the first trial, including the improperly admitted evidence, would have been sufficient for any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt, retrial is the proper remedy." The State's argument falls wide of the mark, however, as the very next sentence in *McKown* notes, "[i]f no rational trier of fact could so find, defendant may not be subjected to a second trial." *Id.* Such is the case here.

¶ 13    Defendant's conviction was not the product of improperly admitted evidence, which we could simply set to one side while we review the sufficiency of the remaining evidence. Rather, under *Murray*, the State presented insufficient evidence to establish every element of its *prima facie* case. As in *Murray*, "[t]he critical question here is not the propriety of admitting the expert

testimony but whether that testimony is sufficient to establish part of the State's *prima facie* case."

*Murray*, 2019 IL 123289, ¶ 59 (Kilbride, J., specially concurring, joined by Karmeier, C.J.).

¶ 14    Swastek's opinion evidence merely established that he was an officer who investigated the Latin Kings. The record is silent as to whether the Latin Kings were involved in two or more gang-related criminal offenses; whether at least one of those offenses occurred after January 1, 1993; whether both offenses were committed within five years of each other; or at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony as required by section 10 of the Act. Thus, the State failed to introduce sufficient evidence to establish every element of its *prima facie* case. See *People v. Figueroa*, 2020 IL App (2d) 160650, ¶ 77 (reversing, in part, defendant's conviction following *Murray*).

¶ 15    Because the evidence was insufficient—not inadmissible—to support a conviction of unlawful contact with a street gang member, double jeopardy principles preclude the State from retrying a defendant with "evidence that it failed to present at the first trial." *People v. Drake*, 2019 IL 123734, ¶ 20; see also *Burks v. United States*, 437 U.S. 1, 18 (1978) ("once the reviewing court has found the evidence legally insufficient, the only 'just' remedy available for that court is the direction of a judgment of acquittal").

¶ 16                                III. CONCLUSION

¶ 17    For the reasons stated, we reverse defendant's misdemeanor conviction for unlawful contact with a street gang member.

¶ 18    Reversed.